UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THOMAS LEE JONES #839246,

                     Petitioner,                 Case No. 1:17-cv-1144

v.                                      Hon. Hala Y. Jarbou

DEWAYNE BURTON,

                     Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner

Thomas Lee Jones is incarcerated with the Michigan Department of Corrections (MDOC) at the

Richard A. Handlon Correctional Facility in Ionia, Michigan. Petitioner and Cody Asbury were

charged with the murder of Amanda Lambson. Following a jury trial in the Genesee County Circuit

Court, Petitioner was convicted of first-degree premeditated murder pursuant to Mich. Comp.

Laws § 750.316(1)(a). On June 4, 2012, the court sentenced Petitioner to a sentence of life

imprisonment without eligibility for parole.

       On December 28, 2017, Petitioner timely filed his habeas corpus petition.

       The petition raises seven grounds for relief, as follows:

    I.       The trial court denied [Petitioner] his 6th Amendment right to
             confrontation and his right to due process by erroneously not allowing him
             to cross-examine co-defendant who gave some testimony against
             [Petitioner] before refusing to answer anymore of the prosecutor's
             questions.

    II.     [Petitioner's] motion for a mistrial was improperly denied where a lawyer
             stated "Guilty" to the jury, while the jury was at lunch at a local restaurant
             and the trial judge informed the entire jury that a lawyer made the
             comment.

III.    The trial court improperly allowed the assistant prosecutor to introduce testimony designed to introduce sympathy for the victim.

IV.    [Petitioner] was denied his right to effective assistance of appellate counsel, where appellate counsel failed to raise meritorious issues on direct appeal.

V.    [Petitioner] was denied effective assistance of trial counsel where counsel failed to object to the prosecution's failure to show proof of premeditation and deliberation of first degree murder.

VI.    Did the insufficient evidence presented at the [Petitioner's] trial, to support the jury's verdict of guilty of one count of premeditated first degree murder, constitute a denial of due process of law guaranteed by the Fifth Amendment of the U.S. Constitution.

VII.    The Circuit Court abused its discretion in denying [Petitioner's] motion for relief from judgment finding that [Petitioner] failed to raise the issues for the first time in his application for leave to appeal to the Michigan Supreme Court during the first round of appeals.

(Pet., ECF No. 1, PageID.8–17.) Respondent has filed an answer to the petition (ECF No. 9) stating that the petition should be denied as to all grounds because they are without merit or procedurally defaulted. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## Discussion

### I.    Factual Allegations

On the morning of November 16, 2010, the City of Flint 911 call center received several calls reporting that a woman was lying in the road at the intersection of Leith and Minnesota in the City of Flint. At least one caller reported that a Blue Buick Skyhawk and a truck were circling around the woman. (Trial Tr. II, ECF No. 10-8 at PageID.474–79.)

Officer Todd Voelker was dispatched to the scene. He testified that when he arrived, he observed a female lying motionless in the northbound lane of Minnesota just south of Leith Street

2

with her pants pulled down to her knees. The victim was facedown in a pool of blood. He observed a walker approximately 30 to 50 feet from the body and a smashed and foaming beer can and a pink jacket on the sidewalk. After securing the scene, Officer Voelker spoke with witnesses. (Trial Tr. II at PageID.483–86.)

Officer Voelker interviewed Joanne Alsopp the morning of November 16. Alsopp testified that Amanda Lambson was homeless and would frequently sit by a tree near the curb on the lot next door. Alsopp gave Lambson food and clothes from time-to-time and had given Lambson the coat that she was wearing when the police found her. Alsopp also said that Lambson used a walker because she had recently had hip surgery. (Trial Tr. IV, ECF No. 10-10 at PageID.830–34.) Alsopp identified the body as Lambson for the police. (*Id.* at PageID.836.)

Sgt. Jeff Collins, a detective with the Flint Police Department, testified that he was the lead investigator on the Lambson case. Based on investigation and tips from multiple sources, Sgt. Collins and other officers contacted and arrested Petitioner on November 18, 2010, after they observed an S-10 pickup truck at Petitioner's reported address. (Trial Tr. III, ECF No. 10-9 at PageID.737–38.) Sgt. Collins testified that, at the police station, after waiving his *Miranda* rights, Petitioner gave a recorded statement providing the details of what had occurred the morning of November 16. (*Id.* at PageID.740–42.) The recorded statement was played for the jury. Petitioner stated that, prior to the incident, he, Cody Asbury, and several other individuals had been drinking beer at their friend Katie's house. On their way to Katie's house, Petitioner and Asbury had picked up another friend, David. Petitioner left his truck at David's house on the corner of Leith and Franklin, about a block from where the incident occurred, and Asbury drove to Katie's house. At the end of the night, Asbury and Petitioner dropped David off at his house. Asbury then suggested he and Petitioner go "fuck[] with" a girl who sat on Minnesota next to a tree. (*Id.* at PageID.763.)

3

When they arrived, they found Lambson sitting beside a tree. Asbury got out of the car and began yelling names at Lambson. Asbury then threw can of beer at her, grabbed her walker and threw it in the street, and began kicking her in the face. (*Id.* at PageID.766.) Petitioner, who had left the car, then dragged Lambson in the street while trying to take off her shoe. (*Id.* at PageID.781.) Petitioner kicked Lambson twice in the head as she grabbed his leg. Petitioner also said that he punched her and "stomped her [head]." (*Id.* at PageID.779–81.) Asbury then got into his car and ran over Lambson several times. Asbury then took Petitioner to get his truck at David's house. Petitioner, followed by Asbury, returned to where Lambson was lying in the street. Petitioner then drove his truck over Lambson and "probably . . . hit her head." (*Id.* at 778–79.) Asbury then hit Lambson a final time. Asbury got out of his car and began kicking Lambson again because she was still moving or moaning. (*Id.* at PageID.768.)

Allecia Wilson, a forensic pathologist, performed an autopsy on Lambert. During her examination, Wilson found extensive blunt force injuries to the head, neck, torso, and extremities. She determined that death was caused by blunt force injury resulting from a motor vehicle collision and a prior physical assault. (Trial Tr. II at PageID.519–20.) Wilson testified that, although she could not tell which blunt force injury caused Lambson's death, each injury was enough to cause the death, and the combination contributed to her death because they were all inflicted within a short time of each other. (*Id.* at PageID.525–26.)

Petitioner did not present any witnesses. The jury deliberated for about three hours before returning its verdict.

On direct appeal to the Michigan Court of Appeals, Petitioner, with the assistance of counsel, raised the first three of his seven issues in his petition. By unpublished opinion issued on

June 2, 2015, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. (Mich. Ct. App. Op., ECF No. 10-20 at PageID.1657–62.)

Petitioner then filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same three issues he had raised in the court of appeals. (ECF No. 10-22 at PageID.1838–42.) By order entered July 29, 2014, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Jones*, 496 Mich. 866 (2014). Petitioner returned to the trial court and filed a motion for relief from judgment raising several claims, including claims IV through VI in his petition. The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3)(a) because it found that Petitioner failed to demonstrate good cause for failing to raise his issues on direct appeal and, alternatively, because his issues were meritless. (Nov. 23, 2015 Trial Ct. Order, ECF No. 10-19.)

Petitioner filed applications for leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered September 7, 2016, and June 27, 2017. (Mich. Ct. App. Order, ECF No. 10-21 at PageID.1738; Mich. S. Ct. Order, ECF No. 10-23 at PageID.1890.)

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28

U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Confrontation Clause

At trial, the prosecution called Asbury as a witness, who had previously pled guilty to second-degree murder and assault with intent to do great bodily harm less than murder and had agreed to testify against Petitioner. Asbury testified about his plea agreement and what he and Petitioner had been doing on the morning of November 16, 2010, prior to the murder, but he refused to answer any further questions about the murder. (Trial Tr. V, ECF No. 10-11 at PageID.1033–41.) After the court inquired of Asbury regarding his intention to testify, it ended direct examination and allowed defense counsel to conduct cross-examination. (*Id.* at PageID.1046–47.) After defense counsel asked a few questions about Asbury's plea, the court stopped the examination, noting that because Asbury seemed willing to testify, he would allow direct-examination to resume. But back on direct-examination, it immediately became apparent that Asbury's refusal to testify extended only to the details of the murder. Thereafter, because of Asbury's refusal to testify on direct-examination, the court refused to allow any further examination. Petitioner argues that the trial court's refusal to permit his counsel to cross-examine Asbury regarding the information he testified about on direct-examination violated his constitutional right to confront witnesses against him. (*Id.* at PageID.1053–57.)

7

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). The Supreme Court has long read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The Confrontation Clause ensures that each witness "will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Lee v. Illinois*, 476 U.S. 530, 540 (1986). It also permits the jury to observe the witnesses, enabling them to judge by their demeanor on the stand whether they are worthy of belief. *See Mattox*, 156 U.S. at 242–43. The importance of the right to cross-examine adverse witnesses cannot be overstated. It is well recognized that cross-examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

 "Unconstitutional limitations on cross-examination are normally subject to harmless-error analysis." *Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681–84 (1986)). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 728 (citing *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007)); *see also Vasquez v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. In determining whether the restriction was harmless, a court must consider a number of factors,

"'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Van Arsdall*, 475 U.S. at 684). Under AEDPA, where a state court has concluded that a constitutional error was harmless beyond a reasonable doubt, in accordance with *Chapman v. California*, 386 U.S. 18 (1967), "'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'" *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (quoting *Fry*, 551 U.S. at 119 (emphasis in original)).

The Michigan Court of Appeals concluded that the trial court's refusal to allow defense counsel to cross-examine Asbury on the topics on which the prosecutor was able to elicit testimony on direct-examination violated the Confrontation Clause, but the error was harmless:

> The trial court should have allowed defense counsel to continue cross-examining Asbury on the topics that the prosecutor covered in her direct examination.
>
> Nonetheless, this error was harmless beyond a reasonable doubt. *See Dendel*, 289 Mich App at 475. Defense counsel asserted that he wanted to ask Asbury about the nature of his plea agreement. However, Asbury had already testified about the agreement. Asbury said that he pleaded to second-degree murder and assault with intent to do great bodily harm less than murder and agreed to a sentence of 30 to 50 years' imprisonment. Part of his plea agreement required him to testify against defendant. Counsel also indicated that Asbury had gone into some aspects of the case regarding defendant's presence at a friend's house prior to the murder and indicated he had not been able to cross-examine Asbury about those aspects, nor had he been able to cross-examine Asbury about his relationship with defendant, whom he had testified that he had known since they were twelve years old. Defense counsel has not, however, identified what evidence he was unable to present because of the trial court's limitation on his cross-examination. *See People v. McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004).
>
> Furthermore, it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Dendel*, 289 Mich App at 475. There was significant evidence implicating defendant in the murder, including defendant's own confession. Defendant does not explain how cross-examining Asbury on the topics that the prosecutor was able to cover on direct examination

would negate that inculpatory evidence. Defendant admitted that he drove over the victim; he thought he went over her head. Next, Asbury drove over the victim and then got out of his car and began kicking her again because he saw her moving or heard her moaning. Thus, defendant's own statement established that the victim was alive when he drove over her. Defendant also admitted that he kicked the victim twice in the head, "stomped on" her, and punched her once. Allecia Wilson, who performed the victim's autopsy, testified that the combination of the victim's blunt force injuries caused her death. The injuries to her head alone would have caused her death, as would the injuries to her chest or the injuries to her abdomen and pelvis.

(ECF No. 10-20 at PageID.1658–59.)

As the Michigan Court of Appeals set out, Petitioner failed to show what testimony he expected to gain from cross-examining Asbury about his plea agreement, the details about what he and Petitioner did on the morning of November 16 prior to the murder or about his relationship with Petitioner that would have weakened the prosecution's case. Moreover, Petitioner's confession that he kicked, stomped, and punched Lambert and ran over her with his truck, hitting her head, was substantial evidence of guilt undermining any argument that the trial court's decision to deny Petitioner further cross-examination of Asbury had a "substantial and injurious" effect on the jury's verdict. *Brecht*, 507 U.S. at 631. In light of this evidence, I conclude that the court of appeals' determination that the limitation on cross-examination of Asbury was harmless is entirely reasonable. Thus, Petitioner is not entitled to relief on this claim.[1]

## IV.    **Jury Bias**

Petitioner contends that the trial court should have granted his motion for a mistrial based upon extraneous juror influence. On the third day of trial, the trial judge's law clerk/bailiff escorted

---

[1] Petitioner raised a related ineffective assistance of counsel claim before the Michigan Court of Appeals based on counsel's failure to move for a mistrial or for an instruction to the jury to disregard Asbury's testimony. Because Petitioner does not raise the claim in his petition or address it in his brief, the Court may treat the issue as abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003).

the jury to lunch at a nearby restaurant. An attorney, Mr. Lubkin, who had no connection with the case, was present at the restaurant. When the jury walked into the restaurant, Mr. Lubkin said the word "guilty" toward the jurors. (Trial Tr. III, ECF No. 10-9 at PageID.699–700.) Following the lunch break, the trial court held a brief hearing with all jurors present. Two jurors said they heard the comment, and two others said that they heard some general discussion about being on a jury. All of the jurors confirmed that the comment would not impact their consideration of the case. (*Id.* at PageID.701–02.)

Pursuant to the Sixth Amendment, a criminal defendant is guaranteed the right to a trial "by an impartial jury." U.S. Const. amend. VI. "This guarantee requires a jury to arrive at its verdict 'based upon the evidence developed at the trial.'" *Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020) (quoting *Turner v. Louisiana*, 379 U.S. 466, 472 (1965)). If a trial court is faced with a colorable claim of juror bias, it "must conduct 'a hearing with all interested parties permitted to participate.'" *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)). In *Remmer*, the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial . . . ." 347 U.S. at 230. Two considerations support a trial court's considerable discretion in deciding how to conduct the inquiry. *United States v. Taylor*, 814 F.3d 340, 348 (6th Cir. 2016). First, the trial court is particularly qualified to ascertain the influence and impact of the communication. Second, flexibility permits the trial court to make the inquiry without "'unnecessarily highlight[ing] the [communication] in the eyes of the jurors.'" *Id.* (quoting *United States v. Mack*, 729 F.3d 594, 606 (6th Cir. 2013)).

The Michigan Court of Appeals addressed the issue as follows:

11

Second, defendant argues that the trial court should have granted his motion for a mistrial based on jury interference. We disagree.

"This Court reviews for an abuse of discretion a trial court's ruling whether to grant a mistrial." *People v. Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009). The trial court has abused its discretion when "it fails to select a principled outcome." *Id.*, quoting *People v. Horn*, 279 Mich App 31, 35 n 1; 755 NW2d 212 (2008) (internal quotation marks omitted).

"A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *Waclawski*, 286 Mich App at 708. "A defendant tried by jury has a right to a fair and impartial jury." *People v. Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). When a jury considers facts not introduced in evidence, the defendant is deprived of his Sixth Amendment rights of confrontation, cross-examination, and assistance of counsel. *Id.* A defendant requesting reversal based on extraneous influence of the jury must show that the jury was exposed to such influences and there is "a real and substantial possibility that they could have affected the jury's verdict." *Id.* at 88–89. A defendant generally must show that "the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* at 89. Whether extraneous influences affected the jury's verdict is an objective inquiry. *Id.* at 89 n 10. If a defendant establishes that the jury was exposed to extraneous influences and there is "a real and substantial possibility that [the influences] affected the jury's verdict," the burden shifts to the prosecution, which must "demonstrate that the error was harmless beyond a reasonable doubt." *Id.* at 88–89.

The court did not abuse its discretion in denying defendant's motion for a mistrial. Defendant moved for a mistrial based on an incident that occurred on April 12, 2012, when the court's law clerk escorted the jurors to lunch at a restaurant near the courthouse. At the restaurant, Anthony Lubkin, an attorney unrelated to the case, said the word, "guilty," while looking at some of the jurors. When he was told not to speak to the jurors, Lubkin said something along the lines of, "would it make it better if—instead of saying guilty, if I said innocent?"

Lubkin's comment, if directed to the jurors, was related to a material aspect of the case—defendant's guilt. *See Budzyn*, 456 Mich at 89. However, the trial court informed the jurors that Lubkin had no knowledge of the case, or even what case the jurors were sitting on. Lubkin was not an attorney for one of the parties, a witness, or even a spectator in the courtroom. There was no reason for the jurors to believe that he knew anything about the murder case. In addition, only two of the jurors heard the word, "guilty." All of the jurors agreed that the comment would not influence their verdict, and they would decide the case using only the evidence that was properly admitted in the courtroom. The comment was addressed by the trial court immediately, which helped ensure that the jurors would not discuss it or allow it to influence their decision.

12

(ECF No. 10-20 at PageID.1659–60.)

In accordance with *Remmer*, the trial court inquired about the circumstances and nature of Mr. Lubkin's comment and the impact on the jurors who heard it, including whether it would affect their abilities to be fair and impartial in deciding the case. As noted, the trial court conducted a hearing immediately after the lunch break and asked the jurors whether they heard the comment. The trial judge explained to all of the jurors that Mr. Lubkin had no knowledge of or connection to the case. The jurors who heard the comment affirmed that it would not interfere with their abilities to fairly decide the case. As well, upon questioning by defense counsel, all of the jurors affirmed that the comment would not influence their verdict. The court thus found that Mr. Lubkin's comment would not affect any juror's ability to be fair and impartial. This factual finding is entitled to a presumption of correctness, which may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Michigan Court of Appeals agreed with this finding, concluding that the trial court had not abused its discretion in denying a mistrial because all of the jurors affirmed that the comment would affect or influence their consideration of the case. This finding, like the trial court's finding, is also entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Moreover, considering all of the circumstances, I conclude that the court of appeals' application of the facts to the applicable legal standard was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Therefore, Petitioner is not entitled to relief on his second claim.

V.      **Admission and Use of Alsopp Testimony**

Petitioner next argues that he was denied a fair trial because Joanne Alsopp's testimony was designed to improperly appeal to the jury's sympathy for the victim and the prosecutor committed misconduct by referring to that testimony in his closing argument.

A.      **Admission of Testimony**

The Michigan Court of Appeals addressed the admission of Alsopp's testimony as follows:

Third, defendant asserts that he is entitled to a new trial because the trial court allowed the prosecution to introduce evidence that had no purpose except to procure the jury's sympathy for the victim. We disagree. We review for an abuse of discretion a trial court's decision to admit evidence. *People v. Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013).

At trial, defendant objected to the prosecution's questioning of Joanne Allsopp on relevancy grounds. MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 401 defines "relevant evidence," as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "All elements of a criminal offense are 'in issue,' and thus material, when a defendant enters a plea of not guilty." *People v. Aguwa*, 245 Mich App 1, 7; 626 NW2d 176 (2001).

Defendant contends that Allsopp's testimony that the victim was homeless and used a walker had no purpose except to procure the jury's sympathy. However, Allsopp's testimony regarding the victim was relevant for several reasons. First, Allsopp identified the body lying in the middle of the street, which was relevant background information and a necessary part of the events that led to the police investigation at the crime scene. Allsopp was able to identify the victim because she knew her. Allsopp's testimony that the victim was homeless and frequently sat in the empty lot next to Allsopp's house demonstrated how Allsopp knew the victim. Allsopp's testimony that she would give the victim food and clothing also explained how Allsopp knew the victim and how Allsopp was able to identify the victim's body right away—the victim was wearing a coat that Allsopp had given her and the victim's walker was lying near her body.

Second, Allsopp's testimony was relevant to establishing that the victim was the girl defendant referred to during his interview with Sergeant Jeff Collins. During his interview, defendant never said the girl's name. However, defendant said that he and Asbury found the girl where Asbury said she lives, by a tree on Minnesota Street. This information coincides with Allsopp's testimony that the victim was

14

homeless and sat by a tree in the vacant lot next to Allsopp's home. Defendant also said that Asbury grabbed the victim's walker and threw it in the street. This corresponds with Allsopp's testimony that the victim used a walker because she had recently had hip surgery. Thus, Allsopp's testimony that the victim was homeless, frequented the empty lot next to Allsopp's house, and used a walker, was relevant to ensure that the victim was the same individual that defendant was referring to during his interview with Sergeant Collins.

(ECF No. 10-20 at PageID.1660–61.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

Here, Petitioner has not shown that the trial court's admission of Alsopp's testimony rendered his proceedings so fundamentally unfair as to violate the Fourteenth Amendment. *See McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (stating that errors of "state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment") (citing *Estelle*, 502 U.S. at 69–70). Allsopp's

testimony was relevant to the issues in the case and not so prejudicial that it denied Petitioner a fair trial. Accordingly, this ground lacks merit.

### B.        Prosecutorial Misconduct

Petitioner argues that the prosecutor violated his right to due process by engaging in misconduct before the jury when he referred to Allsopp's testimony during his closing argument. As noted, the Michigan Court of Appeals rejected Petitioner's claim that the trial court did not err in admitting Alsopp's testimony because it was relevant to several issues in the case. As for his argument that the prosecutor committed misconduct by referencing Alsopp's testimony, the court of appeals found that Petitioner failed to preserve the error by objecting to the prosecutor's comments and, therefore, reviewed the issue only for plain error. (ECF No. 10-20 at PageID.1661.)

Petitioner's prosecutorial-misconduct claim is procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural

16

default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Here, Petitioner failed to comply with the state's contemporaneous objection rule (ECF No. 10-20 at PageID.1661), "an adequate and independent state ground for foreclosing federal review." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011). "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner has not attempted to explain his failure to object during trial. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a petitioner to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Accordingly, I conclude that Petitioner's prosecutorial misconduct claim is procedurally defaulted.

## VI.    Sufficiency of the Evidence

In his sixth ground, Petitioner argues that the prosecutor presented insufficient evidence to convict Petitioner of first-degree murder. In particular, Petitioner argues that there was insufficient evidence to show that he killed the victim with premeditation and deliberation.

Respondent agues that this ground is procedurally defaulted because Petitioner failed to raise the claim on direct review, as required by Michigan Court Rule 6.508(D)(3). Although Petitioner does not expressly state whether he asserts his ineffective assistance of trial and appellate counsel claims as cause for the procedural default, because those claims are founded upon counsel's failure to raise sufficiency of the evidence of premeditation and deliberation at the trial and appellate levels, it appears that Plaintiff intended to raise those claims as cause. Nevertheless, the United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

The Genesee County Circuit Court rejected Petitioner's claim on the merits:

> Defendant next argues that there was insufficient evidence to convict him of first-degree premeditated murder such that he was denied his constitutional right to due process. Regarding this, the Court will quote from the Michigan Court of Appeals opinion in this case, *People v Jones*, unpublished opinion per curiam of the Court of Appeals, issued February 6, 2014 (Docket No. 310988). As that Court stated:

18

"There was significant evidence implicating defendant in the murder, including defendant's own confession. Defendant does not explain how cross-examining Asbury on the topics that the prosecutor was able to cover on direct examination would negate that inculpatory evidence. Defendant admitted that he drove over the victim; he thought he went over her head. Next, Asbury drove over the victim and then got out of his car and began kicking her again because he saw her moving or heard her moaning. Thus, defendant's own statement established that the victim was alive when he drove over her. Defendant also admitted that he kicked the victim twice in the head, "stomped on" her, and punched her once. Allecia Wilson, who performed the victim's autopsy, testified that the combination of the victim's blunt force injuries caused her death. The injuries to her head alone would have caused her death, as would the injuries to her chest or the injuries to her abdomen and pelvis."

As aptly noted by our Court of Appeals, there was sufficient evidence to convict Defendant of first-degree premeditated murder.

(ECF No. 10-19 at PageID.1653–54.)

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* The habeas court may not review issues of credibility under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the trial court did not cite *Jackson* or other federal cases, its sufficiency of the evidence analysis is consistent with that standard. First-degree murder is defined, in relevant part, as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." Mich. Comp. Laws § 750.316(1)(a). When first-degree murder is based upon deliberation and premeditation, the state must prove that the defendant acted with intent to kill the victim and that he acted deliberately and with premeditation. *People v. Dykehouse*, 418 Mich. 488, 495 (1984). In *People v. Morrin*, 31 Mich. App. 301 (1971), the Michigan Court of Appeals discussed the difference between premeditation and deliberation as follows:

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'

*Id.* at 329–30 (footnotes omitted). The Michigan Supreme Court adopted the "second look" approach to determining the sufficiency of the evidence for premeditation and deliberation in *People v. Tilley*, 405 Mich. 38 (1979). In *Tilley*, the court said that, although a person acting on sudden impulse cannot be said to have acted deliberately, the fact that there was a short interval of

20

time for premeditation and deliberation does not preclude a conviction of first-degree premeditated murder. *Id.* at 44–45. If an interval of time between the initial thought and ultimate action existed, this would suffice to afford a reasonable person enough time to take a second look. *Id.* at 45. If the defendant had such an opportunity, a reasonable jury could find that the defendant acted with deliberation and premeditation. *Id.* at 45–46.

Here, there was ample evidence from which the jury could have concluded that Petitioner intended to kill Lambson with premeditation and deliberation. Petitioner's own confession established that he had ample time for a "second look," including while he was kicking and stomping Lambson, while Asbury ran over Lambson with his car, while Asbury was taking Petitioner to his truck and between the time Petitioner ran over Lambson. Moreover, the fact that Petitioner ran over Lambson with his truck is itself evidence of an intent to kill.

Petitioner argues that evidence of premeditation and intent were lacking because there was no evidence that Petitioner and Asbury drove around seeking out a victim to kill, but instead, Petitioner told Sgt. Collins that the plan was simply to "pick on" Lambson. (ECF No. 1-1 at PageID.30–32.) Petitioner further argues that there was no evidence to show a plan to murder Lambson. (*Id.* at PageID.32.) But as set forth above and in the trial court's order denying Petitioner's motion for relief from judgment, the evidence the prosecution presented, including Petitioner's confession, provided ample basis for the jury to conclude that Petitioner intended to kill Lambson and had multiple opportunities for a "second look" before he acted. Petitioner's argument is essentially that the jury should have weighed the evidence differently. However, it was the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The jury reasonably concluded that the evidence, and inferences to be drawn therefrom, supported that

Petitioner formed an intent to kill Lambson sometime between the time Petitioner and Asbury found Lambson and the time Petitioner ran over her with his truck.

The trial court's conclusion that sufficient evidence supported the verdict was a reasonable application of the *Jackson* standard. In addition, the court's factual determinations were fully supported by the trial testimony. Accordingly, Petitioner's challenge to the sufficiency of the evidence lacks merit.

## VII.    Ineffective Assistance of Trial and Appellate Counsel

In his fourth and fifth grounds, Petitioner argues that his trial counsel was ineffective for failing to object based on the prosecution's failure to present sufficient evidence of the premeditation and deliberation element of first-degree murder and that his appellate counsel was ineffective for failure to raise the issue on appeal.

Regarding his ineffective assistance of trial counsel claim, the trial court wrote:

A criminal defendant has the constitutional right to the effective assistance of counsel. US Const, Am VI; Mich Const 1963, art 1, sec 20. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Generally, counsel has discretion over his or her method of trial strategy, and this Court will not substitute its own judgment or evaluate counsel's performance with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Counsel is not ineffective for failing to make a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

. . . .

Defendant argues that trial counsel failed to object to the prosecution's failure to show any proof of any element of first degree murder. As discussed, there was sufficient evidence to convict Defendant of first-degree premeditated murder, and trial counsel is not ineffective for failing to raise a meritless objection.

(ECF No. 10-19 at PageID.1651, 1653.) As for Petitioner's ineffective assistance of appellate counsel claim, the trial court found the argument meritless for the same reason it found the ineffective assistance of trial counsel claim meritless. (*Id.* at PageID.1650.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two

apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Because, as set forth above, an objection to the sufficiency of the evidence would have been rejected, counsel could not have been ineffective for failing to raise the argument. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). Petitioner's ineffective assistance of appellate counsel fails for the same reason. Contrary to Petitioner's argument, a sufficiency of the evidence argument regarding premeditation and deliberation was not the "dead bang winner" Petitioner claims it was. (ECF. No. 1-1 at PageID.28.) When an underlying argument is meritless, "it could scarcely be ineffective of appellate counsel not to raise [it]." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (citing *Rashad v. Lafler*, 675 F.3d 564, 571 (6th Cir. 2012). In other words, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Id.*

Accordingly, I recommend that Petitioner is not entitled to relief on these claims.

## VIII.    Challenge to Motion for Relief from Judgment

In his final ground, Petitioner claims that the trial court abused its discretion in denying his motion for relief from judgment when it concluded that Petitioner should have raised his ineffective assistance of appellate counsel claims on direct appeal to the Michigan Supreme Court.

To the extent Petitioner claims that the trial court committed procedural error in rejecting his ineffective assistance of appellate counsel argument, he does not present a cognizable federal habeas claim. It is well established that alleged errors in the application of state laws or procedures are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. 62. On

habeas review, errors of state law or procedure are reviewable only if they deprived the petitioner of constitutional due process. *See Poindexter v. Mitchell*, 454 F.3d 564, 586 (6th Cir. 2006) (citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)). "[E]rrors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

Regardless, even if the claim were cognizable, Petitioner misconstrues the trial court's opinion. The trial court construed Petitioner's ineffective assistance of appellate counsel claims as an attempt to show "good cause" for his failure to raise his substantive issues on direct appeal. Nonetheless, the court noted that all of his arguments—which the court addressed later in its opinion—were meritless. (ECF No. 10-19 at PageID.1650–53.) For the reasons stated above, the trial court's rejection of Petitioner's ineffective assistance of appellate counsel claim based on the failure to raise a sufficiency of the evidence argument was neither contrary to, nor an unreasonable application of, clearly established law. Accordingly, I recommend that this claim be denied.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

25

find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: December 2, 2020                                    /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           U.S. Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).